Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; and RASIER, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF SEATTLE; SEATTLE DEPARTMENT OF FINANCE AND ADMINISTRATIVE SERVICES; and CALVIN W GOINGS, in his official capacity as Director, Finance and Administrative Services, City of Seattle,<br><br>Defendants. | No.   17-cv-00370-RSL<br><br>**DEFENDANTS' MOTION TO PERMIT DISCOVERY NECESSARY TO OPPOSE SUMMARY JUDGMENT**<br><br>**NOTED ON CALENDAR: April 26, 2019** |

MOTION TO PERMIT DISCOVERY (17-cv-00370)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii
DEFENDANTS' MOTION TO PERMIT DISCOVERY NECESSARY TO OPPOSE
SUMMARY JUDGMENT ................................................................................................... 1
    BACKGROUND .......................................................................................................... 2
    PROCEDURAL HISTORY.......................................................................................... 2
    STANDARD................................................................................................................. 4
    ARGUMENT ................................................................................................................ 5
        I.   Discovery Should Be Permitted To Determine Whether the Labor Exemption
            to Federal Antitrust Law Applies to the Drivers Covered by the Ordinance.....5
        II.  Discovery Should Be Permitted To Determine Whether the For-Hire
            Transportation Services Provided by Companies like Uber and Lyft Depend
            Upon Coordinated Driver Conduct ...................................................................10
    CONCLUSION ...........................................................................................................11
CERTIFICATE OF SERVICE ............................................................................................13

MOTION TO PERMIT DISCOVERY (17-cv-00370) - i

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

# TABLE OF AUTHORITIES

**Federal Court Cases**

*Am. Fed. of Musicians v. Carroll*,
  391 U.S. 99 (1968) .................................................................................................................. 7

*Am. Med. Ass'n v. United States*,
  317 U.S. 519 (1943) ................................................................................................................ 9

*Am. Needle, Inc. v. NFL*,
  560 U.S. 183 (2010) .............................................................................................................. 10

*BMI v. CBS*,
  441 U.S. 1 (1979) .................................................................................................................. 10

*Bodine Produce, Inc. v. United Farm Workers Organizing Committee*,
  494 F.2d 541 (9th Cir. 1974) ............................................................................................. 5, 6

*Chamber of Commerce v. City of Seattle*,
  274 F.Supp.3d 1140 (W.D. Wash. 2017) ............................................................................... 3

*Chamber of Commerce v. City of Seattle*,
  274 F.Supp.3d 1155 (W.D. Wash. 2017) ............................................................................... 3

*Chamber of Commerce v. City of Seattle*,
  890 F.3d 769 (9th Cir. 2018) ............................................................................................. 4, 7

*Clark v. City of Seattle*,
  No. 2:17-cv-00382-RSL (W.D. Wash. Aug. 24, 2017) ......................................................... 3

*Columbia River Packers Ass'n v. Hinton*,
  315 U.S. 143 (1942) ................................................................................................................ 9

*Conley Motor Express, Inc. v. Russell*,
  500 F.2d 124 (3d Cir. 1974) ................................................................................................... 9

*Costco Wholesale Corp. v. Maleng*,
  522 F.3d 874 (9th Cir. 2008) ............................................................................................ 5, 10

*H.A. Artists & Associates, Inc. v. Actors' Equity Association*,
  451 U.S. 704 (1981) ................................................................................................................ 9

*Hunt v. Crumboch*,
  325 U.S. 821 (1945) ................................................................................................................ 6

*L.A. Meat & Provision Drivers Union Local 626 v. United States*,
  371 U.S. 94 (1962) .................................................................................................................. 9

*Meyer v. Kalanick*,
  174 F.Supp.3d 817 (S.D.N.Y. 2016) ..................................................................................... 11

*NCAA v. Bd. of Regents of Univ. of Okla.*,
  468 U.S. 85 (1984) ................................................................................................................ 10

*New Prime Inc. v. Oliveira*,
  139 S.Ct. 532 (2019) ............................................................................................................... 8

MOTION TO PERMIT DISCOVERY (17-cv-00370) - ii

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

*NLRB v. Hearst Publications*,
  322 U.S. 111 (1944) .................................................................................................... 7

*NLRB v. United Ins. Co. of Am.*,
  390 U.S. 254 (1968) .................................................................................................... 6

*Program Engineering, Inc. v. Triangle Publications, Inc.*,
  634 F.2d 1188 (9th Cir. 1980) .................................................................................... 5

*Spence v. Southeastern Alaska Pilots' Association*,
  789 F.Supp. 1007 (D. Alaska 1990) ........................................................................... 9

*United States v. Hutcheson*,
  312 U.S. 219 (1941) .................................................................................................... 6

*United States v. Women's Sportswear Mfrs. Ass'n*,
  336 U.S. 460 (1949) .................................................................................................... 9

**Federal Statutory Authorities**

15 U.S.C. §17 ............................................................................................................. 5, 6, 8

29 U.S.C. §52 ............................................................................................................. 5

29 U.S.C. §101 ........................................................................................................... 6

29 U.S.C. §113 ........................................................................................................... 6, 7

29 U.S.C. §152 ........................................................................................................... 7

**State Statutory Authorities**

SMC 6.310.735.F ....................................................................................................... 2

SMC 6.310.735.H.1 .................................................................................................... 2

SMC 6.310.735.H.2 .................................................................................................... 2

**Federal Rules and Regulations**

Fed. R. Civ. P. 56(d) .................................................................................................. 1, 5

MOTION TO PERMIT DISCOVERY (17-cv-00370) - iii

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

# DEFENDANTS' MOTION TO PERMIT DISCOVERY NECESSARY TO OPPOSE SUMMARY JUDGMENT

Pursuant to Federal Rule 56(d), Defendants the City of Seattle, Seattle Department of Finance and Administrative Services, and Calvin W. Goings (collectively "Seattle") move this Court to permit certain limited discovery necessary for Seattle to prepare a complete opposition to Plaintiffs' Motion for Summary Judgment ("MSJ"), Dkt. #100.

Plaintiffs' Motion asks this Court to declare facially invalid a Seattle ordinance establishing a process through which drivers for taxi and "transportation network coordinators" ("TNCs") like Uber and Lyft can designate a representative to engage in collective negotiations over the terms and conditions of their work for those companies. Plaintiffs contend that the Ordinance is preempted by federal antitrust law because it requires the regulated parties to engage in a "group boycott," and because it previously required negotiations regarding payments by or to regulated companies to or from their drivers.

Although Seattle will demonstrate at the appropriate time that neither theory provides a valid basis under federal antitrust law for invalidating the Ordinance, at this time, pursuant to Federal Rule of Civil Procedure 56(d), this Court should deny or defer adjudicating Plaintiffs' Motion until after Seattle has the opportunity to conduct discovery and to obtain declarations and other evidence relevant to two separate issues: (1) whether the work performed by for-hire transportation drivers subject to the Ordinance primarily involves selling their labor rather than acting as entrepreneurs operating independent businesses, such that any collective activity by those drivers with respect to the terms and conditions under which they work falls within the "labor exemption" to federal antitrust law; and (2) whether the for-hire transportation services provided by taxi companies and TNCs like Uber and Lyft depend upon coordinated driver conduct, such as the establishment of a fixed pricing scheme for all rides dispatched through the Uber or Lyft application, such that it is inappropriate to apply *per se* rules of antitrust invalidity to coordinated driver conduct. Because Seattle's success in establishing that either of these factual circumstances applies to one or more of the drivers covered by the Ordinance would require the denial of Plaintiff's Motion, Seattle should be permitted to conduct limited discovery with respect to both of these issues before responding to Plaintiff's Motion.

MOTION TO PERMIT DISCOVERY (17-cv-00370) - 1

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Permitting this discovery will enable Seattle to prepare an opposition that addresses all of the faults with Plaintiffs' antitrust challenge to the Ordinance, allowing this Court to resolve all of the issues remaining in this lawsuit in connection with the pending Motion for Summary Judgment.

## BACKGROUND

The Seattle ordinance at issue in this lawsuit establishes a process through which a majority of the qualifying drivers for a particular driver coordinator (such as a taxi company or a TNC like Uber or Lyft) may designate an "exclusive driver representative" ("EDR") to negotiate with the driver coordinator regarding certain terms and conditions. Seattle Municipal Code ("SMC") 6.310.735.F. If an EDR is certified, the EDR and driver coordinator must meet and negotiate in good faith regarding certain subjects. SMC 6.310.735.H.1. Under the original version of the Ordinance, the subjects of negotiation included "best practices regarding vehicle equipment standards; safe driving practices; the manner in which the driver coordinator will conduct criminal background checks of all prospective drivers; the nature and amount of payments to be made by, or withheld from, the driver coordinator to or by the drivers; minimum hours of work, conditions of work, and applicable rules." Ordinance, Dkt. #39-1, §3 (adding SMC 6.310.735.H.1). But in January 2019, the Seattle City Council passed, and the Mayor signed, an amendment to the Ordinance eliminating the requirement that driver coordinators and EDRs negotiate over "the nature and amount of payments to be made by, or withheld from, the driver coordinator to or by the drivers." *See* Dkt. #100-1.

Any agreement reached between the EDR and the driver coordinator must be approved by a Seattle official before it can take effect. SMC 6.310.735.H.2.

## PROCEDURAL HISTORY

Plaintiff the Chamber of Commerce of the United States filed its first lawsuit challenging Seattle's Ordinance on March 3, 2016. Complaint, Dkt. #1, *in Chamber of Commerce v. City of Seattle*, No. 2:16-cv-00322-RSL (W.D. Wash. Mar. 3, 2016). On August 8, 2016, this Court granted Seattle's motion to dismiss, concluding that the Chamber lacked standing to pursue its lawsuit at that time. Order Granting Defendants' Motion to Dismiss, Dkt. #63, *in Chamber of*

*Commerce v. City of Seattle*, No. 2:16-cv-00322-RSL (W.D. Wash. Aug. 9, 2016).

The Chamber filed its second lawsuit challenging the Ordinance on March 9, 2017. Dkt. #1. The Chamber alleged that the Ordinance was preempted by the National Labor Relations Act and the Sherman Act, that Seattle was violating federal antitrust law by enforcing the Ordinance, that the Ordinance exceeded Seattle's powers under state law, and that the Ordinance violated Washington's Consumer Protection Act and Public Records Act. *Id.* The Chamber sought a temporary restraining order barring Seattle's further implementation of the Ordinance. Dkt. #2. This Court issued a preliminary injunction providing the requested relief on April 4, 2017, concluding that the Chamber's antitrust claims presented "serious questions" on the merits, and that the public would be "well-served by maintaining the status quo while the issues are given careful judicial consideration." *Chamber of Commerce v. City of Seattle*, 274 F.Supp.3d 1140, 1147-48, 1155 (W.D. Wash. 2017).

Following further briefing on Seattle's motion to dismiss Plaintiffs' First Amended Complaint,[1] the Court held that Plaintiffs' claims all failed as a matter of law and so dismissed the case. *Chamber of Commerce v. City of Seattle*, 274 F.Supp.3d 1155 (W.D. Wash. 2017), *rev'd in part*, 890 F.3d 769 (9th Cir. 2018). The Court concluded that Plaintiffs' Sherman Act claims failed because the Ordinance was entitled to "state action" immunity from federal antitrust law, that Plaintiffs' NLRA preemption arguments lacked merit, and that Plaintiffs' state law claims likewise failed. *Id.*

On August 24, 2017, the Court dissolved the preliminary injunction it had previously issued. Order Granting Defendants' Motion to Dismiss, Dkt. #47, *in Clark v. City of Seattle*, No. 2:17-cv-00382-RSL (W.D. Wash. Aug. 24, 2017), *aff'd*, 899 F.3d 802 (9th Cir. 2018). Plaintiffs thereafter sought an injunction pending appeal, which the Ninth Circuit granted on September 8, 2017. Dkt. #77.

On May 11, 2018, the Ninth Circuit issued a decision reversing in part and affirming in

---

[1] Plaintiffs filed an amended complaint adding Rasier, LLC, a subsidiary of Uber, as an additional plaintiff on April 11, 2017. Dkt. #53.

MOTION TO PERMIT DISCOVERY (17-cv-00370) - 3

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

part the Court's decision dismissing Plaintiffs' First Amended Complaint. The Ninth Circuit concluded that Plaintiffs' NLRA preemption claims were properly dismissed, but that the Ordinance did not satisfy the requirements for "state action" immunity from federal antitrust law. *Chamber of Commerce v. City of Seattle*, 890 F.3d 769, 787, 787-89, 794-95 (9th Cir. 2018). The Ninth Circuit remanded Plaintiffs' antitrust claims to this Court for further proceedings. *Id.* at 795.

Following remand to this Court, Seattle agreed not to enforce the Ordinance until final judgment is entered in this lawsuit, and the parties agreed to defer discovery until the filing of Plaintiffs' motion for summary judgment and the resolution of any Rule 56(d) motion by Seattle. Dkt. #90, at 4. Plaintiffs filed their motion for summary judgment on February 15, 2019, contending that the Ordinance is preempted and facially invalid because it authorizes "group boycotts" that are *per se* illegal under federal antitrust law and because it previously authorized *per se* illegal price fixing. Dkt. #100.

As a result of this procedural history, Seattle has not taken any steps to enforce or implement the Ordinance since April 2017. In addition, Seattle has not had an opportunity to take any discovery from Plaintiffs. Although Seattle provided Plaintiffs with its initial disclosures, Plaintiffs took the position that they were not required to make such disclosures because no discovery is necessary in this lawsuit. Dkt. #90, at 7. Seattle has also not had any opportunity to undertake third-party discovery from the for-hire drivers permitted to engage in collective negotiations under the Ordinance, from driver coordinators like Lyft that are subject to the Ordinance but are not plaintiffs in this lawsuit (although the Chamber purports to bring this lawsuit on Lyft's behalf), or from other individuals or entities that possess information potentially relevant to the antitrust claims remaining in the case. *See* Declaration of Stacey M. Leyton in Support of Defendants' Rule 56(d) Motion ¶¶3-11.

## STANDARD

Rule 56 provides that where a nonmoving party shows it "cannot present facts essential to justify its opposition" to a motion for summary judgment, the court may "defer considering the motion," "allow time to obtain affidavits or declarations or to take discovery," or "issue any other

MOTION TO PERMIT DISCOVERY (17-cv-00370) - 4

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

appropriate order." Fed. R. Civ. P. 56(d). "Generally where a party has had no previous opportunity to develop evidence and the evidence is crucial to material issues in the case, discovery should be allowed before the trial court rules on a motion for summary judgment." *Program Engineering, Inc. v. Triangle Publications, Inc.*, 634 F.2d 1188, 1193 (9th Cir. 1980).

**ARGUMENT**

Seattle has not yet had any opportunity to conduct discovery of the other parties to this lawsuit or to undertake third-party discovery. Because Seattle is not a participant in the for-hire transportation market, the City lacks direct access to testimony and other evidence about the work performed by for-hire transportation drivers, any capital investments they make, and the manner in which companies like Uber and Lyft operate that enables coordinated conduct by for-hire drivers with respect to matters such as ride prices, dispatching, or passenger evaluations. Because facts relating to these issues, as well as expert testimony based on the information revealed through discovery on those issues, may provide a basis for this Court to conclude that *per se* rules of antitrust invalidity do not apply to the conduct authorized by the Ordinance—which is a showing Plaintiffs must make to establish the Ordinance's facial invalidity, *see Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 885-86 (9th Cir. 2008)—those facts are relevant to Seattle's opposition to Plaintiff's Motion, and discovery with respect to those issues should be permitted before Seattle is required to file any opposition.

**I.  Discovery Should Be Permitted To Determine Whether the Labor Exemption to Federal Antitrust Law Applies to the Drivers Covered by the Ordinance.**

Plaintiffs invoke the federal antitrust laws to challenge Seattle's efforts to provide a means through which drivers for for-hire transportation companies such as Uber and Lyft can negotiate collectively to improve their working terms and conditions. In this respect, Plaintiffs are part of a long tradition: The Sherman Act was used as a tool to target unions and labor organizing immediately upon its enactment in 1890. *See Bodine Produce, Inc. v. United Farm Workers Organizing Committee*, 494 F.2d 541, 544 (9th Cir. 1974). Congress responded to these misuses of the Sherman Act in 1914 by creating a statutory "labor exemption" to federal antitrust law through the Clayton Act, 15 U.S.C. §17, 29 U.S.C. §52, and then in 1932 (after the Supreme Court had construed the Clayton Act

MOTION TO PERMIT DISCOVERY (17-cv-00370) - 5

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

narrowly and continued to enjoin labor conduct on antitrust grounds), through the Norris-LaGuardia Act, 29 U.SC. §§101 *et seq. See Bodine Produce*, 494 F.2d at 545-47.

The labor exemption prevents federal antitrust law from being applied to coordinated efforts by workers to improve their circumstances. The 1914 Clayton Act provides that "[t]he labor of a human being is not a commodity or article of commerce," and states that labor organizations cannot "be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws." 15 U.S.C. §17. The 1932 Norris-LaGuardia Act prohibits the federal courts from issuing an injunction "in a case involving or growing out of a labor dispute," and provides that this prohibition applies to "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. §101, 113. As a result of these statutory provisions, "A worker is privileged …, acting either alone or in concert with his fellow workers, to associate or decline to associate with other workers … and his labor is not to be treated as 'a commodity or article of commerce.'" *Hunt v. Crumboch*, 325 U.S. 821, 824 (1945). As long as workers "act in [their] self-interest and do[] not combine with non-labor groups, the licit and the illicit .. are not to be distinguished by any judgment regarding the wisdom or unwisdom, the rightness or wrongness, the selfishness or unselfishness of the end of which the particular [worker] activities are the means." *United States v. Hutcheson*, 312 U.S. 219, 232 (1941).

If the workers subject to the Ordinance were "employees" for common law purposes, there would be no question that the labor exemption would apply to the conduct authorized by the Ordinance. However, the Ordinance applies only to drivers who would be classified as "independent contractors" rather than "employees" at common law (and under the NLRA, which uses the common law test). Ordinance §6; *see NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 256 (1968) (after 1947 enactment of the Taft-Hartley Act, NLRA's coverage determined by "commonlaw agency test"). Contrary to Plaintiffs' argument, however, MSJ at 12-14, this does not make the labor exemption categorically unavailable to all of the drivers covered by the Ordinance. That is because the labor

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

exemption's application does not turn upon the common law (or NLRA) distinction between independent contractors and employees (referred to as "servants," in the language of the common law). *See generally* Brief of Amicus Curiae Professor Samuel Estreicher in Support of Defendants-Appellees, Dkt. #66, *in Chamber of Commerce v. City of Seattle*, 890 F.3d 769 (9th Cir. 2018).[2]

The Norris-LaGuardia Act defines labor disputes to include "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether or not the disputants stand in the proximate relation of employer and employee*." 29 U.S.C. §113(c) (emphasis added).[3] Likewise, the Supreme Court long ago rejected the argument that the common law distinction between employees and independent contractors captures the full range of employment disputes covered by the foundational federal labor statutes. *NLRB v. Hearst Publications*, 322 U.S. 111, 124 (1944) ("Congress had in mind a wider field than the narrow technical legal relation of 'master and servant,' as the common law had worked this out in all its variations, and at the same time a narrower one than the entire area of rendering service to others."). Indeed, the Supreme Court has held that the labor exemption can apply to individuals who are independent contractor *employers* if there is an economic inter-relationship between their work and that of other workers. *Am. Fed. of Musicians v. Carroll*, 391 U.S. 99, 105-06 (1968).

Plaintiffs' argument that the labor exemption cannot apply to independent contractors relies primarily on the fact that in 1947, through the Taft-Hartley Act, Congress overruled *Hearst Publications*' specific holding regarding the NLRA and limited application of the NLRA to individuals who would be classified as employees at common law. *See* 29 U.S.C. §152(3)

---

[2] Plaintiffs contend that the Ninth Circuit's decision "implicitly determined that the labor exemption does not apply," Dkt. #100, at 12, but Seattle preserved the outstanding antitrust questions, and the Ninth Circuit specifically noted that it was addressing *only* the state action immunity issue. *Chamber of Commerce*, 890 F.3d at 781.

[3] Plaintiffs premise their argument in part on the reference to "employers and employees" in Section 20 of the Clayton Act, *see* MSJ at 12, but Plaintiffs' restrictive interpretation of that provision was the very unduly narrow misinterpretation that Congress sought to eliminate by making the Norris-LaGuardia Act apply "regardless of whether or not the disputants stand in the proximate relation of employer and employee." Further, as described below, the Supreme Court long ago recognized that such references do not necessarily incorporate the common law test for distinguishing employees from independent contractors.

(providing that, for purposes of the NLRA, the term "employee" does not include "any individual having the status of an independent contractor"). But the Clayton Act and the Norris-LaGuardia Act predate both the NLRA and Taft-Hartley, and their provisions were not amended by Congress in 1947. The labor exemption recognized in *Hutcheson* does not depend upon the NLRA provision revised by Taft-Hartley, and *Hearst* makes it clear that prior to Taft-Hartley, the federal labor laws were *not* limited to common law employees. Instead, employment disputes covered by those laws sometimes involved individuals who would be characterized as independent contractors at common law.[4]

Just this Term, the Supreme Court reiterated that Congress's early twentieth century labor and employment statutes reached beyond the common law definition of employee. In *New Prime Inc. v. Oliveira*, 139 S.Ct. 532 (2019), the Court held that in 1925 when Congress adopted the Federal Arbitration Act but excluded certain "contracts of employment" from its coverage, the exclusion applied to not only "agreements between employers and employees but also agreements that require independent contractors to perform work." *Id.* at 539. As the Court explained, in the early twentieth century, the term "employment" was "consistently afforded … a broad construction" and was treated "more or less as a synonym for 'work.'" *Id.* at 539-40. "Nor did [this definition] distinguish between different kinds of work or workers: All work was treated as employment, whether or not the common law criteria for a master-servant relationship happened to be satisfied." *Id.* at 540.

Accordingly, in determining whether the labor exemption applies here, the relevant question is not whether the drivers covered by the Ordinance are independent contractors or employees at common law, but whether the drivers are primarily involved in selling their labor—which "is not a commodity or article of commerce" subject to federal antitrust law, 15 U.S.C. §17—or whether they are engaged in operating independent, entrepreneurial businesses, as in each

---

[4] Because Taft-Hartley indisputably *changed* the law by narrowing the scope of the NLRA, it cannot be interpreted as a reflection of the congressional intent underlying either the pre-Taft-Hartley NLRA or the earlier Clayton and Norris-LaGuardia Acts.

MOTION TO PERMIT DISCOVERY (17-cv-00370) - 8

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

of the cases Plaintiffs have cited. *See, e.g.*, *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 144-45 (1942) (that fishermen had organized as a union was insufficient to trigger the labor exemption where they were primarily engaged in selling a commodity and exercised "extensive" control over the supply of that commodity); *L.A. Meat & Provision Drivers Union Local 626 v. United States*, 371 U.S. 94, 96 (1962) (labor exception inapplicable to "grease peddlers" who were "independent entrepreneurs whose earnings as middlemen consisted of the difference between the price at which they bought the restaurant grease from various sources and the price at which they sold it to the processors"); *United States v. Women's Sportswear Mfrs. Ass'n*, 336 U.S. 460, 463-64 (1949) (labor exemption inapplicable to association of contractors who were "entrepreneur[s]," not "laborer[s]," based on extent to which their operations involved incurring significant "rentals, capital costs, overhead and profits"); *Am. Med. Ass'n v. United States*, 317 U.S. 519, 536 (1943) (labor exemption inapplicable to combination of independent physicians who objected to hiring of physicians as employees rather than independent businesspeople).[5]

Of course, that the labor exemption is potentially applicable here does not establish that it actually applies. Instead, its application will depend upon specific facts regarding the work performed by for-hire drivers and the terms of their relationships with companies like Uber and Lyft. The facts are likely to show that even if companies covered by the Ordinance, including taxi companies, Uber, and Lyft, exercise insufficient control and supervision over their drivers to render them common-law employees (because, for example, drivers can choose their own working hours), the drivers for one or more of those companies are nonetheless selling their own labor and personal services, without making significant specialized and business-specific capital investments (as distinguished, for example, from purchasing personal vehicles that are otherwise regularly used outside the business context), and that the labor exemption should therefore apply.[6] To establish

---

[5] Plaintiffs also cite *H.A. Artists & Assocs., Inc. v. Actors' Equity Ass'n*, 451 U.S. 704, 717 n.20 (1981), but the footnote they cite (which did not address the issues before the Court in that case), nowhere suggests that the labor exemption depends upon the common law distinction between employees and independent contractors.

[6] The nature of the drivers' investment in training and specialized capital is likely to distinguish the semi owners and pilots at issue in *Conley Motor Express, Inc. v. Russell*, 500 F.2d 124 (3d Cir. 1974), and *Spence v. Southeastern Alaska Pilots' Ass'n*, 789 F.Supp. 1007 (D. Alaska 1990), from the drivers here.

MOTION TO PERMIT DISCOVERY (17-cv-00370) - 9

those facts, and enable its experts to evaluate the nature of the work performed by for-hire drivers, Seattle must conduct discovery of both Uber (a party here) and third parties like Lyft and the for-hire drivers who work for those companies. *See* Leyton Decl. ¶¶6-8, 10-11. Seattle should be permitted to conduct that discovery and to complete its expert analysis of the information generated thereby before responding to Plaintiffs' Motion. *Id.*

II. **Discovery Should Be Permitted To Determine Whether the For-Hire Transportation Services Provided by Companies like Uber and Lyft Depend Upon Coordinated Driver Conduct.**

In order to prove that the Ordinance is facially invalid, Plaintiffs must establish that the conduct authorized by the Ordinance is *per se* unlawful under federal antitrust law. *Costco*, 522 F.3d at 885-86. But the Supreme Court has recognized that "[w]hen 'restraints on competition are essential if the product is to be available at all,' *per se* rules of illegality are inapplicable, and instead the restraint must be judged according to the flexible Rule of Reason." *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 203 (2010) (quoting *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 101 (1984)). In *BMI v. CBS*, 441 U.S. 1 (1979), for example, the Supreme Court concluded that the rule that price fixing is *per se* unlawful did not apply to the "blanket licenses" through which certain organizations of songwriters provided licensees with "the right to perform any and all of the compositions owned by the members or affiliates" of those organizations. *Id.* at 5. Although that license set a fixed price for all of the members' or affiliates' compositions, the Court concluded that the unique nature of the blanket license, which was "quite different from anything any individual owner could issue" because it enabled licensees to procure the right to perform many works without having to contact each songwriter for individual permission while also enabling the songwriters' representatives to ensure that performances were properly licensed, justified applying the Rule of Reason. *Id.* at 23-24. The Court has since recognized that the same principle requires that certain group boycotts be subject to the Rule of Reason. *See Am. Needle*, 560 U.S. at 187, 203-04 (Rule of Reason applied to NFL teams' decision to grant exclusive license for teams' intellectual property to one company and deny license to its competitor).

The for-hire transportation services provided through the Uber or Lyft applications may fall

MOTION TO PERMIT DISCOVERY (17-cv-00370) - 10

within this exception, because the usefulness of the applications to consumers appears to depend upon the immediate availability of numerous drivers who have agreed to provide rides dispatched through the application at prices established by and paid through the application on the basis of uniform pricing formulas. Indeed, if the Uber and Lyft applications are *not* products for which "restraints on competition are essential," the manner in which those applications enable large groups of drivers who are ostensibly competing with one another for business to ensure that the prices paid by consumers for their services will be determined on the basis of uniform pricing formulas instead of by competitively bidding against one another might be *per se* unlawful under the Sherman Act. *See, e.g.*, *Meyer v. Kalanick*, 174 F.Supp.3d 817 (S.D.N.Y. 2016). If the applications *do* depend upon such coordinated driver conduct, then the *per se* rules of invalidity Plaintiffs have invoked in support of their Motion for Summary Judgment do not apply.

In order to determine whether *per se* rules are inapplicable here because of the unique features of the ride services provided through the Uber and Lyft applications, Seattle should be permitted to undertake discovery regarding how the Uber and Lyft applications operate, including the extent to which those applications enable drivers to engage in parallel and coordinated conduct with respect to the prices charged for each ride or the driver who will be dispatched for a particular ride request. Seattle should also be permitted to undertake discovery regarding the necessity of such driver coordination to the usefulness and appeal of those applications. This information is not in Seattle's possession and cannot reasonably be developed without conducting discovery from Uber and Lyft. Leyton Decl. ¶¶6-7, 9-11.

## CONCLUSION

For the foregoing reasons, this Court should grant Seattle leave to undertake discovery before responding to Plaintiffs' Motion for Summary Judgment, and should re-note Plaintiffs' Motion for a date no earlier than October 15, 2019.

//

//

//

MOTION TO PERMIT DISCOVERY (17-cv-00370) - 11

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

| | | |
|---|---|---|
| 1 | DATED this 22nd day of March, 2019. | Respectfully submitted, |
| 2 | | |
| 3 | | PETER S. HOLMES<br>Seattle City Attorney |
| 4 | By: | /s/Stacey M. Leyton<br>WSBA #53757 |
| 5 | | Stephen P. Berzon (pro hac vice)<br>Stacey M. Leyton (pro hac vice) |
| 6 | | P. Casey Pitts (pro hac vice)<br>Altshuler Berzon LLP |
| 7 | | 177 Post Street, Suite 300<br>San Francisco, CA 94108 |
| 8 | | Phone: (415) 421-7151<br>Fax: (415) 362-8064 |
| 9 | | E-mail: sberzon@altber.com<br>E-mail: sleyton@altber.com |
| 10 | | E-mail: cpitts@altber.com |
| 11 | | |
| 12 | | Gregory C. Narver, WSBA #18127<br>Sara O'Connor-Kriss, WSBA #41569 |
| 13 | | Assistant City Attorneys<br>Seattle City Attorney's Office |
| 14 | | 701 Fifth Avenue, Suite 2050<br>Seattle, WA 98104 |
| 15 | | Phone: (206) 684-8233 — Gregory C. Narver |
| 16 | | Phone: (206) 615-0788 — Sara O'Connor-Kriss<br>Fax: (206) 684-8284 |
| 17 | | E-mail: gregory.narver@seattle.gov<br>E-mail: sara.oconnor-kriss@seattle.gov |
| 18 | | |
| 19 | | *Attorneys for Defendants* |

MOTION TO PERMIT DISCOVERY (17-cv-00370) - 12

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

# CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March, 2019, I electronically filed this RULE 56(d) MOTION TO PERMIT DISCOVERY NECESSARY TO OPPOSE SUMMARY JUDGMENT and the accompanying DECLARATION OF STACEY M. LEYTON IN SUPPORT OF DEFENDANTS' MOTION TO PERMIT DISCOVERY NECESSARY TO OPPOSE SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the below-listed:

| | |
|---|---|
| Timothy J. O'Connell | tim.oconnell@stoel.com |
| Michael A. Carvin | mcarvin@jonesday.com |
| Jacqueline M. Holmes | jholmes@jonesday.com |
| Christian G. Vergonis | cvergonis@jonesday.com |
| Robert Stander | rstander@jonesday.com |
| Lily Fu Claffee | lfclaffee@uschamber.com |
| Steven P. Lehotsky | slehotsky@uschamber.com |
| Kathryn Comerford Todd | ktodd@uschamber.com |
| Robert J. Maguire | robmaguire@dwt.com |
| Douglas C. Ross | douglasross@dwt.com |

DATED this 22nd day of March, 2019, at Seattle, Washington.

By: /s/Stacey M. Leyton
sleyton@altber.com

MOTION TO PERMIT DISCOVERY (17-cv-00370) - 13

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200