1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
CHAMBER OF COMMERCE OF THE        )        No. C17-0370RSL
UNITED STATES OF AMERICA, *et al.*,    )
                                                              )
                                       Plaintiffs,    )        ORDER REGARDING LCR 37
            v.                                              )        SUBMISSION
                                                              )
THE CITY OF SEATTLE, *et al.*,              )
                                                              )
                                       Defendants.  )
_____)

        This matter comes before the Court on the "LCR 37 Joint Submission Regarding
Requests for Production to Chamber of Commerce." Dkt. # 113. On June 4, 2019, the Court
continued consideration of plaintiffs' pending summary judgment motion so that defendants
could conduct discovery from ride referral services and drivers regarding (a) whether the for-hire
drivers are selling their labor, as opposed to a product or service that qualifies as a commodity
under the antitrust laws, (b) the nature and scope of the drivers' entrepreneurial investments in
training, vehicles, and other business expenditures, (c) the drivers' control over the supply of
whatever commodity they are selling, (d) what powers and authority the drivers cede to the ride
referral companies, (e) the process by which the ride referral applications can generate a single
ride option at a fixed price, and (f) the market appeal and efficiencies of the coordinated selling
arrangement. The City of Seattle thereafter propounded discovery requests regarding these issues
on both the Chamber of Commerce and Raiser, LLC. The Chamber, which is pursuing this
litigation as the representative of its members, has declined to produce any documents in the

possession of its non-party members on the ground that the documents are not in its possession, custody, or control. The City seeks an order compelling the Chamber to produce documents from the entities on which it relies to establish its standing in this matter or, in the alternative, asks the Court to reconsider its decision that the Chamber has associational standing because the members' individual participation in the lawsuit is required.

A party served with a discovery request under Rule 34 is required to produce (or allow inspection of) responsive items "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). In the Ninth Circuit, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Campos-Eibeck v. C R Bard Inc.*, 2020 WL 835305, at *2 (S.D. Cal. Feb 20, 2020) (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995)). Rather than attempt to show that the Chamber has possession, custody, or control of the requested documents, the City relies on a line of cases in which production is compelled on equitable grounds. In *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 506 (S.D.N.Y. 2005), for example, the court found that, where an entity brings suit as the agent of non-parties, "[i]t is both logically inconsistent and unfair to allow the right to sue to be transferred . . . free of the obligations that go with litigating a claim." *See also PDVSA US Litig. Trust v. Lukoil Pan Ams. LLC*, 2019 WL 1261806, at *11-12 (S.D. Fla. Feb. 11, 2019) (trust seeking to recover damages suffered by non-parties is obligated to produce discovery from those non-parties); *Blackrock Balanced Capital Portfolio (FI) v. HSBS Bank USA*, 2016 WL 11187259, at *3 (S.D.N.Y. June 2, 2016) (purchasers of mortgage backed securities asserting the rights of prior certificate holders have the burden of obtaining third-party document discovery from the previous owners); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 129814, *2 (E.D. Tenn. Jan. 10, 2014) (assignees must produce documents held by assignors); *Southampton Pointe Prop. Owners Assoc., Inc. v. OneBeacon Ins. Co.*, 2013 WL 12241830, *3 (D.S.C. Aug. 27, 2013) (assignee of claim against insurers had the concomitant obligation to obtain and

1    produce relevant documents regarding the claim); *Aspen Grove Owners Ass'n v. Park*

2    *Promenade Apartments, LLC*, 2010 WL 11561763, at *1 (W.D. Wash. May 11, 2010)

3    (homeowner's association that was statutorily authorized to sue on behalf of owners could not

4    avoid discovery obligations even if it did not currently have the requested documents in its

5    possession); *Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc.*, 2007 WL 4365391, at *7

6    (N.D. Ill. Dec. 11, 2007) (attorney-in-fact for companies participating in a reinsurance pool was

7    deemed to have control over documents maintained by participating members for purposes of

8    Rule 34); *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 147-49 (S.D.N.Y.

9    1997) ("Courts are cautious not to let the requirements of Rule 34 lead to an unjust result" and

10   will require an assignee to produce documents in the possession of a third party closely

11   connected to the litigation).

12        Almost all of the above-cited cases involve situations in which the plaintiff entity was

13   contractually, statutorily, or otherwise assigned the right to pursue the claims of non-parties. The

14   underlying theory seems to be that the named plaintiff stands "in the shoes of" the original rights

15   holder and must therefore bear the burden of obtaining and producing requested documents. If

16   this were not the rule, the courts reason, an assigned claim would be more valuable than it was

17   when held by the original rights holder because the discovery obligations "would magically

18   disappear" upon assignment, "to the detriment of defendants." *Winnick*, 228 F.R.D. at 506-07.

19   While some of the cases cited above suggest that the relationship between the named plaintiff

20   and the non-parties gives rise to an inference of control under Rule 34(a)(1), others apply an

21   analytical framework distinct from "possession, custody, or control," finding that even if

22   plaintiff has no legal right to obtain the documents and no special relationship with the non-

23   parties, it must bear the burden of production as a matter of fundamental fairness. *Blackrock*

24   *Balanced Capital Portfolio*, 2016 WL 11187259, at *3.

25        The above-captioned matter involves an association pursuing claims on behalf of a

26   handful of its members. It is unclear under what authority the Chamber initiated this litigation. Is

the right to initiate litigation conveyed as part of the membership agreement? Did the interested members designate the Chamber as their agent or otherwise delegate to the Chamber the right to pursue the antitrust claims at issue here? Do the ride referral members retain the ability to prevent or stop the litigation if they do not believe the Chamber is adequately representing their interests, or does the Chamber have the right to represent them regardless of their wishes or interests? Will the association's members be bound by whatever judgment is entered in this case or is the relationship such that, should the Chamber lose, the individual members will disclaim privity and attempt to relitigate the same issues? Absent evidence regarding the relationship of the association, its members, and this litigation, it remains an open question whether the Chamber has a contractual, statutory, or other right to demand the production of documents that are necessary to pursue its claims for relief from its members. *U.S. v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). What is clear, however, is that the production of documents from the Chambers' individual members regarding their relationships with and control over their drivers, the functionality of the ride referral applications, and the advantages of a coordinated selling arrangement is essential to the resolution of the antitrust claims the Chamber has asserted.

There are, therefore, two possibilities. The Chamber may have the power to acquire and produce documents that are necessary to the resolution of its claims, including documents related to the labor exemption to federal antitrust law and/or the existence of coordinated driver conduct. If, given its relationship with its members and whatever authorization gives it the right to pursue this litigation, it has the power to demand production from its members, it will be required to exercise that power and respond to the outstanding discovery requests. On the other hand, the Chamber may not have the power to produce its members' documents and information in furtherance of the claims it has asserted on their behalf in this litigation. If that is the case, the participation of its individual members would be necessary, and the Chamber may not pursue this litigation in a representative capacity. *See Associated Gen. Contractors of Am. v. Metro.*

1   *Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998) (individual participation is required

2   where individualized proof from the members is needed).[1]

3

4     Plaintiff Chamber of Commerce of the United States of America shall, within fourteen

5   days of the date of this Order, notify the Court whether it has the power to obtain and produce

6   the documents requested by the City of Seattle in its First Set of Requests for Production and the

7   date by which the production will be made (not to exceed forty-five days from the date of this

8   Order). If the Chamber does not have that power and the participation of its individual members

9   is required to resolve the claims in this litigation, the Chamber is not "an appropriate

10  representative of its members entitled to invoke the court's jurisdiction," *Warth v. Seldin*, 422

11  U.S. 490, 511 (1975), and this case will proceed with Rasier, LLC, as the sole plaintiff.

12

13    Dated this 10th day of March, 2020.

14  *MrS Lasnik*
    Robert S. Lasnik

15      United States District Judge

16

17

18

19

20

21

22  _____

23   [1] The Chamber points out that standing is generally determined as of the time the complaint is
filed. Dkt. # 113 at 13. Standing, however, is a jurisdictional issue that the Court may reconsider at any

24  point in the litigation. *Hohlbein v. Hospitality Ventures LLC*, 248 Fed. App'x 804, 805 (9th Cir. 2007).
*See also Robins v. Spokeo, Inc.*, 742 F.3d 409, 411 (9th Cir. 2014) (noting without comment that the

25  district court reconsidered its previous ruling on standing before dismissing plaintiff's claims), *rev'd on
other grounds*, __ U.S. __, 136 S. Ct. 1540 (2016). Since the Court's initial consideration of the standing

26  issue, it has become clear that whether the Chamber is entitled to relief depends on details related to its
members' individual operations, making reconsideration appropriate.

ORDER REGARDING LCR 37 SUBMISSION   -5-